UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
EDWARD GUILLEN,                                                    :
                                                                   :
                                    Plaintiff,                     :
                                                                   :
                                                                   :          19 Civ. 5655 (JPC) (OTW)
                         -v-                                       :
                                                                   :          OPINION AND ORDER
THE CITY OF NEW YORK, JONATHAN                                     :
CANNIZZARO, and FRANCISCO BARDALES,                                :
                                                                   :
                                    Defendants.                    :
                                                                   :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

        Following a traffic stop on January 4, 2018, Plaintiff Edward Guillen was arrested and

charged with two counts of criminal possession of a weapon in the fourth degree.  On April 11,

2018, the Manhattan District Attorney's Office dismissed those criminal charges after determining

that it would not be able to prove the case against Plaintiff beyond a reasonable doubt.  On June

18, 2019, Plaintiff brought this action against the City of New York and the two officers of the

New York City Police Department ("NYPD") who arrested him, alleging a multitude of violations

of the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C.

§§ 1981, 1983, 1985, 1986, and 1988, and various New York state laws.  Plaintiff claims that the

officers, among other things, falsely arrested him without probable cause, maliciously caused

proceedings to be initiated against him, and violated his right to equal protection.  Against the City,

Plaintiff brings a *Monell* claim under section 1983 and a challenge to its hiring and supervision

practices under state law.

        Before the Court is Defendants' motion for summary judgment pursuant to Federal Rule

of Civil Procedure 56.  For the reasons discussed below, the Court grants Defendants' motion,

dismissing with prejudice Plaintiff's federal claims and dismissing without prejudice his state claims, over which the Court declines to exercise supplemental jurisdiction.

## I.    Background

### A.  Facts[1]

At approximately 2:36 a.m. on January 4, 2018, Plaintiff was pulled over in the vicinity of Second Avenue and 118th Street in Manhattan by Defendants Jonathan Cannizzaro and Francisco Bardales (the "Officer Defendants"), two NYPD officers then-assigned to the 25th Precinct.  BWC at 02:36:09; Bardales Dep. Tr. at 41:7-11; Cannizzaro Dep. Tr. at 29:3-5; Guillen Dep. Tr. at 52:5-10; Shin Declaration, Exh. C ("Notice of Claim") at 1.  At the time of the traffic stop, Plaintiff was driving home alone from his mother's house in his brother's Ford Expedition.  Guillen Dep. Tr. at 52:11-53:1.  The parties disagree as to the basis for the traffic stop.  The Body Worn Camera shows Officer Cannizzaro advising Plaintiff that he was pulled over for making a right turn at a red light, which is not permitted in New York City.  BWC at 02:36:21-02:37:40.  Plaintiff disputes that he

---

[1] The following facts are drawn primarily from the parties' statements of material facts pursuant to Local Civil Rule 56.1, Dkt. 82 ("Defts. 56.1 Stmt."); Dkt. 93 ("Pl. Counter 56.1 Stmt."); the exhibits attached to the Soo-Young Shin Declaration, Dkt. 81 ("Shin Declaration"); video footage of Plaintiff's arrest from the body-worn camera of Officer Bardales, *id.*, Exh. E (the "Body Worn Camera" or "BWC"); and the parties' deposition transcripts, *see* Dkts. 101 ("Guillen Dep. Tr."), 102 ("Bardales Dep. Tr."), 103 ("Cannizzaro Dep. Tr.").  Unless otherwise noticed, the Court cites to only Plaintiff's Counter Rule 56.1 Statement where the parties do not dispute the fact or Plaintiff simply seeks to add his own "spin" on the facts or otherwise disputes the inferences from the stated fact.

The Court also notes that the parties' Rule 56.1 statements at times include legal arguments and conclusions.  Rule 56.1 requires parties submitting a motion for summary judgment to include a "separate, short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried."  SDNY Loc. Civ. R. 56.1(a).  "Rule 56.1 statements are not argument and must contain factual assertions with citation to the record rather than conclusions."  *Pacenza v. IBM Corp.*, No. 04 Civ. 5831 (SCR), 2007 WL 9817926, at *4 (S.D.N.Y. July 26, 2007).  Moreover, "legal arguments . . . belong in briefs, not Rule 56.1 statements, and so are disregarded in determining whether there are genuine issues of material fact."  *Alliance Sec. Prods., Inc. v. Fleming Co.*, 471 F. Supp. 2d 452, 454 (S.D.N.Y. 2007).

made a right turn at a red light prior to the traffic stop.  *Id.*; Pl. Counter 56.1 Stmt. ¶ 9.  Officer Bardales informed Plaintiff that even if he did not turn right on red, the rear license plate on Plaintiff's vehicle did not have a light, to which Plaintiff responded, "it doesn't?"  BWC at 02:37:40-02:37:47; Guillen Dep. Tr. at 54:25-55:4.[2]

During the traffic stop, the Officer Defendants found a bottle of wine in a black plastic bag in the back seat of Plaintiff's vehicle.  BWC at 02:37:04-02:37:40; Cannizzaro Dep. Tr. at 45:1-12, 47:24-48:3.  After Officer Cannizzaro observed that the bottle of wine was "open," Plaintiff responded that he had not been drinking.  *Id.*; Cannizzaro Dep. Tr. at 44:24-25, 45:18-46:3.[3] Plaintiff was also captured on the Body Worn Camera discarding the black plastic bag and his cigarette out the driver's side window.  BWC at 02:36:35-02:37:30; Pl. Counter 56.1 Stmt. ¶¶ 10A, 14A.  Officer Cannizzaro then directed Plaintiff to exit the vehicle, conducted a pat-down of Plaintiff, and directed Plaintiff to stand at the rear of Plaintiff's vehicle next to Officer Bardales.  BWC at 02:37:48-02:38:10; Cannizzaro Dep. Tr. at 46:18-20, 53:8-18; Guillen Dep. Tr. at 57:6-21, 58:4-10, 62:23-63:4.

---

[2] The Body Worn Camera footage shows that Plaintiff did not dispute Officer Bardales's observation at the time of the stop that his rear license plate light was out.  *See* BWC at 02:37:40-02:37:47.  But Plaintiff later testified during his deposition that his "taillight was good."  Guillen Dep. Tr. at 54:25-55:4.  Plaintiff, however, provides no support for his testimony and his after-the-fact self-serving testimony is not sufficient to create a genuine dispute of material fact as to whether his rear license plate light was out at the time of his arrest.  *See, e.g.*, *Adler v. Penn Credit. Corp.*, No. 19 Civ. 7084 (KMK), 2022 WL 744031, at *9 (S.D.N.Y. Mar. 11, 2022) (noting that "a non-moving party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment" (cleaned up)).

[3] Plaintiff testified during his deposition that the bottle of wine recovered from his vehicle "had never been opened," Guillen Dep. Tr. at 56:14-19, and the Body Worn Camera footage shows Plaintiff maintaining that he had not been drinking at the time of the traffic stop, *see* BWC at 02:37:04-02:37:40.  Regardless, the question of whether the bottle was open at the time Plaintiff was pulled over is immaterial to the Court's resolution of Defendants' motion for summary judgment.

While Plaintiff was standing at the rear bumper of his vehicle with Officer Bardales, Officer Cannizzaro conducted a visual inspection of the interior of the vehicle and recovered a small wooden bat from the pocket of the driver's side door.  BWC 02:40:02-02:40:06; Cannizzaro Dep. Tr. at 59:21-61:6, 62:3-7; Guillen Dep. Tr. at 55:13-15.  At his deposition, Guillen described this object as "a little billy club baseball bat."  Guillen Dep. Tr. at 58:15-16.  When Officer Cannizzaro asked Plaintiff about this object, Plaintiff explained that he kept it for "safety."[4]  BWC 02:40:02-02:40:06; Cannizzaro Dep. Tr. at 62:3-7.  After recovering the wooden bat, the Officer Defendants handcuffed Plaintiff.  BWC at 02:40:10-02:40:30.  Officer Cannizzaro informed Plaintiff that he was not under arrest "right now" and the handcuffs were placed on Plaintiff as a "safety precaution."  *Id.* at 02:40:31-02:40:46.  Officer Cannizzaro explained that Plaintiff would be receiving a ticket for making a right turn on red, having an open container of alcohol in the vehicle, and for possessing a "club for protection" because it is considered "a weapon."[5]  *Id.* at 02:42:58-02:42:49.  The Body Worn Camera shows Plaintiff responding to Officer Cannizzaro by referring to the scars on his face and explaining that he "almost got killed last year."  *Id.* at 02:42:32-02:42:40 (Plaintiff telling Officer Cannizzaro to remove his hood, to look at his face, and referring to scars on his face).

At some point during the traffic stop, the Officer Defendants called an NYPD van to the scene.  Cannizzaro Dep. Tr. at 69:15-20; Guillen Dep. Tr. at 57:2-5.  Officer Cannizzaro escorted Plaintiff to the NYPD van.  BWC at 02:42:50-02:43:24; Guillen Dep. Tr. at 59:24-60:3.  Plaintiff

---

[4]  Plaintiff's deposition testimony that he told Officer Cannizzaro that the billy club belonged to his brother, *see* Guillen Dep. Tr. at 58:11-59:2, is contradicted by the Body Worn Camera footage, which shows Plaintiff acknowledging to Officer Cannizzaro that he kept the wooden bat for "safety," BWC 02:40:02-02:40:06.

[5]  Plaintiff testified during his deposition that he told the Officer Defendants that "the handcuffs were too tight," Guillen Dep. Tr. at 59:15-23, but the Body Worn Camera does not show Plaintiff complaining about the tightness of the handcuffs during the stop.

was then transported to the 25th Precinct.  Cannizzaro Dep. Tr. at 72:2-4; Bardales Dep. Tr. at 68:8-13.  Officer Bardales drove Plaintiff's vehicle to the basement garage of the 25th Precinct while Officer Cannizzaro drove back to the Precinct in his police vehicle.  BWC at 02:44:04-02:48:10; Bardales Dep. Tr. at 68:20-69:3; Cannizzaro Dep. Tr. at 72:5-13.

At the Precinct, Plaintiff was searched again and questioned at the front desk by Officer Cannizzaro before the Officer Defendants escorted him to a holding cell.  BWC at 02:49:46-02:52:50; Cannizzaro Dep. Tr. at 74:12-25.   In the holding cell, Officer Cannizzaro directed Plaintiff to remove his jewelry and all items of clothing with strings, and conducted a visible search of Plaintiff's person.   BWC 02:52:51-02:57:26; Guillen Dep. Tr. at 63:15-64:3, 64:8-67:8; Bardales Dep. Tr. at 70:15-19.  At some point after arriving at the Precinct, Officer Bardales also recovered a knife from Plaintiff's vehicle.  Shin Declaration, Exh. I at 4; Guillen Dep. Tr. at 69:25-70:25.   Plaintiff acknowledged during his deposition that the Officer Defendants did not use physical force on him at any point during the traffic stop and after his arrest, and only complained that the handcuffs were too tight.  Guillen Dep. Tr. at 59:15-20, 60:10-12, 67:6-8.  Plaintiff also is not alleging that he suffered any physical injuries during the stop and arrest.  *Id.* at 71:6-8 ("Q. So are you alleging any physical injuries from this incident?  A.  No.").

Officer Cannizzaro testified during his deposition that he ultimately decided not to issue a ticket and, instead, "used [his] discretion" to arrest Plaintiff.  Cannizzaro Dep. Tr. at 50:9-15.[6]  He then generated the arrest paperwork for Plaintiff, including "the booking sheet and the complaint

---

[6] It is unclear at what point Officer Cannizzaro made the decision to arrest Plaintiff instead of issuing a ticket.  The Body Worn Camera shows Officer Cannizzaro reassuring Plaintiff at the scene of the traffic stop that he was not under arrest.  BWC at 02:40:31-02:40:46.  But Officer Cannizzaro testified during his deposition that he "ma[d]e the determination that [Plaintiff] would be arrested because he "recovered a billy club from inside the vehicle."  Cannizzaro Dep. Tr. at 61:19-62:7, 63:8-11.

report," Cannizzaro Dep. Tr. at 76:21-23, which notes that Plaintiff was arrested for criminal possession of a weapon in the third degree in violation of New York Penal Law section 265.02(1) for being "in possession of a billy club and a large knife, which he states [are] for protection." Shin Declaration, Exh. F at 1; *see also id.*, Exhs. J-K.

The criminal complaint was filed in the New York County Criminal Court, with the case captioned *The People of the State of New York v. Edward Guillen*, 2018NY002324 (the "Criminal Action"). Shin Declaration, Exh. I at 4; Pl. Counter 56.1 Stmt. ¶ 38A. The criminal complaint charged Plaintiff with two counts of criminal possession of a weapon in the fourth degree in violation of New York Penal Law section 265.01(1). Shin Declaration, Exh. I at 4. In support of the criminal complaint, Officer Cannizzaro wrote that he "took one billy club from the driver side door of [Plaintiff]'s vehicle," he was informed by Officer Bardales "that [Officer Bardales] took one large fixed blade knife from underneath the back seat of [Plaintiff]'s vehicle," he knew the bat to be a billy club "based upon [his] training and experience," and Plaintiff stated to him in substance that the billy club was "for protection." *Id.* Officer Cannizzaro reviewed and signed the criminal complaint. Cannizzaro Dep. Tr. at 78:12-22; Shin Declaration, Exh. I at 4.

Plaintiff was detained at the Precinct for approximately fifteen to sixteen hours before he was taken to booking. Guillen Dep. Tr. at 67:9-14; Notice of Claim at 2. A few hours later, he was arraigned in court in the Criminal Action. Guillen Dep. Tr. at 67:15-22. At the arraignment, the judge released Plaintiff on his own recognizance. Shin Declaration, Ex. I at 3; Guillen Dep. Tr. at 67:23-25; Pl. Counter 56.1 Stmt. ¶ 40. During a hearing in the Criminal Action on April 11, 2018, the Assistant District Attorney assigned to the case moved to dismiss the charges against Plaintiff on the basis that "the People . . . cannot prove the case beyond a reasonable doubt." Shin

Declaration, Exh. L at 2.  As a result, the judge dismissed the charges against Plaintiff.  *Id.*, Exh. I at 1-2.

On July 2, 2018, Plaintiff filed a Notice of Claim with the New York City Comptroller's Office alleging, among other violations, that he "was falsely arrested, falsely imprisoned, and illegally searched and seized" by NYPD officers on January 4, 2018 "in violation of his Constitutional civil right to be free from illegal search and seizure."  Notice of Claim at 2.

## B.  Procedural History

Plaintiff filed the Complaint in this action on June 18, 2019, alleging fifteen causes of action under state and federal law.  Dkt. 1.  On September 23, 2019, Defendants filed their Answer to the Complaint.  Dkt. 14 ("Compl.").  The Honorable Alison J. Nathan, to whom this case was previously assigned, referred this case to the Honorable Ona T. Wang, United States Magistrate Judge, for general pretrial supervision and settlement.  Dkts. 20, 38.  Defendants moved for summary judgment on October 25, 2021.  Dkts. 80, 81 (Shin Declaration), 82 (Defts. 56.1 Stmt.), 83 ("Motion").  After failing to file a timely opposition, on December 13, 2021, Plaintiff requested a *nunc pro tunc* extension of time to oppose summary judgment from November 24, 2021 until January 21, 2022.  Dkt. 86.  Judge Nathan granted an extension until January 14, 2022.  Dkt. 88.  Plaintiff then sought a second extension of time to oppose Defendants' Motion until January 21, 2022, Dkt. 89, which Judge Nathan granted, Dkt. 90.  On January 22, 2022, Plaintiff filed his opposition, Dkts. 91 ("Opposition"), 92-93, and Defendants filed their reply on February 3, 2022.  Dkt. 94.  This case was reassigned to the undersigned on April 10, 2022.

## II.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

On a motion for summary judgment, the moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may discharge its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  "If the moving party meets it initial burden, the nonmoving party must then 'set forth specific facts showing that there is a genuine issue for trial' using affidavits or other evidence in the record, and cannot rely on the 'mere allegations or denials' contained in the pleadings."  *Taylor v. City of New York*, No. 19 Civ. 6754 (KPF), 2022 WL 744037, at *6 (S.D.N.Y. Mar. 11, 2022) (quoting *Anderson*, 477 U.S. at 248); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("The non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence showing that its version of the events is not wholly fanciful." (internal quotation marks and citations omitted)).

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought."  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).  At the same time, however, "in considering 'what may reasonably be inferred' from witness

testimony, the court should not accord the nonmoving party the benefit of 'unreasonable inferences, or inferences at war with undisputed facts.'" *Taylor*, 2022 WL 744037, at *7.

### III.     Discussion

Plaintiff asserts federal and state law claims arising out of the circumstances of his arrest and subsequent prosecution.  Plaintiff brings the following federal claims under sections 1981, 1983, 1985, and 1986 against the Officer Defendants: (i) false arrest and false imprisonment, Compl. ¶¶ 76-80, (ii) excessive force, *id.* ¶¶ 87-90, (iii) malicious prosecution, *id.* ¶¶ 100-106, (iv) failure to intervene, *id.* ¶¶ 111-114, (v) malicious abuse of process, *id.* ¶¶ 122-128, (vi) deprivation of rights and denial of equal protection, *id.* ¶¶ 138-146, and (vii) conspiracy to interfere with civil rights, *id.* ¶¶ 147-153.  Plaintiff also asserts corresponding claims under New York law.  *Id.* ¶¶ 69-75, 81-86, 91-99, 107-110, 115-121, 129-137.  In addition, Plaintiff brings a section 1983 claim against the City of New York for allegedly maintaining a policy, custom, or practice of violating people's rights to be free from illegal searches and seizures, *id.* ¶¶ 160-165, and a state law claim against the City for negligent hiring, retention, and supervision, *id.* ¶¶ 154-159.

## A. Federal Claims

### 1. False Arrest and False Imprisonment[7]

"A § 1983 claim for false arrest[] rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Courts analyze section 1983 claims for false arrest under "the law of the state in which the arrest occurred." *Davis v. Rodriquez*, 364 F.3d 424, 433 (2d Cir. 2004). To state a claim for false arrest under New York law, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (internal quotation marks omitted).

The existence of probable cause to arrest "is a complete defense to an action for false arrest." *Weyant*, 101 F.3d at 852 (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *accord Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) ("Under New York law, the existence of probable cause is an absolute defense to a false arrest claim."); *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff.").

---

[7] Although the Second Cause of Action asserts a claim for false arrest *and* false imprisonment in violation of section 1983, "[t]he elements of a claim for false imprisonment made pursuant to Section 1983 are the same as those for false arrest," *Copeland v. N.Y.C. Police Dep't*, No. 97 Civ. 4224 (DLC), 1998 WL 799169, at *2 (S.D.N.Y. Nov. 13, 1998), and thus "the claims are analyzed in identical fashion," *Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005); *see also Leibovitz v. Barry*, No. 15 Civ. 1722 (KAM), 2016 WL 5107064, at *8 (E.D.N.Y. Sept. 20, 2016) (analyzing false arrest and false imprisonment claims under both section 1983 and New York law as "essentially the same causes of action"); *Murray v. Williams*, No. 05 Civ. 9438 (NRB), 2007 WL 430419, at *5 (S.D.N.Y. Feb. 8, 2007) ("[W]e consider claims of false arrest and false imprisonment to be synonymous causes of action, as the elements of both claims under New York law are the same." (citing *Covington v. City of New York*, 171 F.3d 117, 125 (2d Cir. 1999))).

"Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). This probable cause inquiry requires the Court look to "the totality of the circumstances," *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010), and assess what the officer objectively knew at the time of arrest, "considering those facts available to the officer at the time of the arrest and immediately before it," *Scott v. City of New York*, No. 19 Civ. 6289 (JPO), 2022 WL 846929, at *2 (S.D.N.Y. Mar. 22, 2022) (internal quotation marks omitted); *see also Celestin v. City of New York*, 581 F. Supp. 2d 420, 430 (E.D.N.Y. 2008) ("Probable cause to arrest depends on the 'totality of the circumstances' and is an objective rather than subjective inquiry as to 'the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest.'" (citations omitted)).

"[O]nce probable cause exists to arrest a defendant, 'it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.'" *Soomro v. City of New York*, 174 F. Supp. 3d 806, 812 (S.D.N.Y. 2016) (quoting *Jaegly*, 439 F.3d at 154). In other words, "Defendants prevail if there was probable cause to arrest Plaintiff[] for any single offense." *Marcavage v. City of New York*, 689 F.3d 98, 109-10 (2d Cir. 2012).

In addition, "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "The right to be free from arrest without probable cause was a clearly established right at the time of [Plaintiff]'s arrest[]." *Delgado v. City of New York*, No. 19 Civ. 6320 (JPC), 2021 WL 2473817, at *8

11

(S.D.N.Y. June 17, 2021).  When a right is clearly established, the question is "whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful."  *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).  In the context of false arrest, an officer's probable cause determination is "objectively reasonable" if there was "'arguable' probable cause at the time of the arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'"  *Id.* at 157 (quoting *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)).

Plaintiff's false arrest and false imprisonment claim fails because the Officer Defendants had probable cause to arrest Plaintiff or, at a minimum, arguable probable cause for Plaintiff's arrest, entitling them to qualified immunity.  First, the Officer Defendants had probable cause or arguable probable cause to arrest Plaintiff because the rear license plate light on Plaintiff's car was out at the time the vehicle was pulled over.  Section 375 of the New York Vehicle and Traffic Law provides, in relevant part that:

> Every motor vehicle except a motorcycle, driven upon a public highway **during the period from one-half hour after sunset to one-half hour before sunrise or at any other time when windshield wipers are in use**, as a result of rain, sleet, **snow**, hail or **other unfavorable atmospheric condition**, and at such other times as visibility for a distance of one thousand feet ahead of such motor vehicle is not clear, shall display . . . **if required to display a number plate on the rear, a white light which shall illuminate the numerals on such plate in such manner as to render such numerals legible for at least fifty feet from the rear**.

N.Y. Vehicle & Traffic Law § 375(2)(a)(4) (emphasis added).  Under section 402, all motor vehicles operating in New York must have licenses plates "conspicuously displayed" with "one on the front and one on the rear of such vehicle."  *Id.* § 402(1)(a).

Here, it is undisputed that the traffic stop occurred on January 4, 2018 at approximately 2:36 a.m.—which fell within the period from one-half hour after sunset to one-half hour before sunrise.  *See generally* BWC at 02:36:10; *see also* Cannizzaro Dep. Tr. at 40:22-41:6.  Plaintiff

also testified that it was snowing at the time of the traffic stop.  *See* Guillen Dep. Tr. at 50:25-51:3, 51:11-12.  It is also undisputed based on the Body Worn Camera that Officer Bardales informed Plaintiff that his vehicle did not have the rear license plate illuminated and Plaintiff did not dispute Officer Bardales's observation at the time of his arrest that his rear license plate light was out.  *See* BWC at 02:37:40-02:37:47.  "[W]hen an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle and effect a subsequent arrest for that offense." *Kennedy v. City of New York*, 570 F. App'x 83, 84 (2d Cir. 2014) (internal quotation marks omitted).  Likewise, "[a] traffic infraction is deemed an offense that can give rise to probable cause for arrest."  *Quiles v. City of New York*, No. 15 Civ. 1055 (CM), 2016 WL 6084078, at *6 (S.D.N.Y. Oct. 12, 2016); *see also* N.Y. Vehicle & Traffic Law § 155 ("For purposes of arrest without a warrant . . . a traffic infraction shall be deemed an offense.").

Although Plaintiff testified during his deposition that there was no issue with his taillight, *see* Guillen Dep. Tr. at 54:25-55:4, his unsubstantiated testimony from over three years after his arrest, without any corroborating evidence, is insufficient to create a factual dispute in the face of Officer Bardales's contemporaneous observation that Plaintiff's rear license plate was not illuminated and Plaintiff's failure at the time of the stop to disagree with that observation.  *See, e.g.*, *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."); *Bryant v. Steele*, 462 F. Supp. 3d 249, 258 (E.D.N.Y. 2020) ("Courts routinely reject self-serving affidavits as bases for establishing a genuine dispute of material fact.").  Accordingly, based on the facts in the record, the Court finds that it was reasonable for the Officer Defendants to believe that they had probable cause, or at a minimum arguable probable cause, to arrest Plaintiff based

on Officer Bardales's observation that Plaintiff's vehicle failed to have an illuminated rear license plate in violation of section 375(2)(a)(4) of the New York Vehicle and Traffic Law.

Second, the Officer Defendants had probable cause or arguable probable cause to arrest Plaintiff for littering.   Section 16-118 of the New York City Administrative Code states, in pertinent part, that "no person shall litter, sweep, throw or cast . . . any ashes, garbage, paper, dust, or other rubbish and refuse of any kind . . . in or upon any street or public place, vacant lot, air shaft, areaway, backyard court, park, or alley." N.Y.C. Admin. Code § 16-118(1)(a).  "Under New York Penal Law, littering is an arrestable offense if committed in the presence of an officer." *United States v. Herron*, 18 F. Supp. 3d 214, 221 (E.D.N.Y. 2014) (citing *United States v. Rodriquez*, 368 F. App'x 178, 180 (2d Cir. 2010)); *see also People v. Mangum*, 3 N.Y.S.3d 332, 335 (2015) (noting that officers had probable cause to arrest the defendant for littering in violation of New York City Administrative Code section 16-118); *People v. Ormsby*, 816 N.Y.S.2d 623, 624 (2006) (finding that the officer had probable cause to arrest the defendant for both littering and disorderly conduct).  During the traffic stop, Plaintiff was captured on the Body Worn Camera throwing a cigarette and a black plastic bag out the vehicle's driver's side window and onto the ground.  BWC at 02:36:35-02:37:34.  Plaintiff does not dispute that he threw the black plastic bag out the window.  *See* Pl. Counter 56.1 Stmt. ¶ 14A.  Plaintiff also does not dispute that he threw his cigarette out the window, but contends in his response to Defendants' Rule 56.1 Statement that "the cigarette was thrown out with the permission of defendants."  *Id.* ¶ 10A.  The Body Worn Camera, however, does not support that contention.  *See* BWC at 02:37:20-02:37:32.  Thus, the Court finds that the Officer Defendants also had probable cause or arguable probable cause to arrest Plaintiff for littering.

14

Third, the Officer Defendants had probable cause or arguable probable cause to arrest Plaintiff for possessing a billy club.  Section 265.01 of the New York Penal Law provides that "[a] person is guilty of criminal possession of a weapon in the fourth degree when" the person "possesses," among other things, a "billy."  N.Y. Penal Law § 265.01(1).  It is undisputed that at the time of Plaintiff's arrest, the Officer Defendants recovered what they believed to be a billy club from the driver's seat door pocket of Plaintiff's vehicle.  BWC at 02:40:01-02:40:08; Guillen Dep. Tr. at 58:11-19.  Plaintiff also admitted that he knew about the billy because he had "seen that billy club in the car before."  Guillen Dep. Tr. at 71:1-5.  Plaintiff contends in his response to Defendants' Rule 56.1 Statement, however, that "Defendant Cannizzaro recovered a small wooden souvenir bat, which is not a billy club, as a matter of law.  *People v. Talbert*, [484 N.Y.S.2d 680] (3d Dep't 1985)."[8]  Pl. Counter 56.1 Stmt. ¶ 18A.  As an initial matter, "legal arguments . . . belong in briefs, not Rule 56.1 statements, and so are disregarded in determining whether there are genuine issues of material fact."  *Alliance Sec. Prods., Inc.*, 471 F. Supp. 2d at 454.

But even if the Court were to consider Plaintiff's legal argument in his response to the Rule 56.1 Statement, the holding in *Talbert* cuts against Plaintiff's argument.  In *Talbert*, the defendant was arrested for possession of a billy in violation of New York Penal Law section 265.01(1) after the officer found a "wooden stick or club" in the defendant's vehicle following a traffic stop for speeding.  484 N.Y.S.2d at 681.  On appeal, the defendant argued that the officer did not have probable cause to arrest him because the object found in the defendant's vehicle—a wooden stick with "tape around each end [that] provides a handle grip"—was not a "billy" under section 265.01.  *Id*. at 682.  The Appellate Division of the New York Supreme Court disagreed with the defendant,

---

[8] It is worth pointing out that Plaintiff did not object to the characterization of the wooden bat as a "billy club" during his deposition and, in fact, he himself referred to the bat as "a little billy club baseball bat."  Guillen Dep. Tr. at 58:11-19.

finding that while the term "billy" as set forth in the statute "must be strictly interpreted to mean a heavy wooden stick with a handle grip which, from its appearance, is designed to be used to strike an individual and not for other lawful purposes," "[a]n object which can be used as a billy but which does not fit the strict definition may still be a prohibited weapon under [section 265.01] if there exists the requisite intent to use the object unlawfully against another." *Id.* Accordingly, the court found that the officer "did have probable cause to believe that [the] defendant was in possession of a billy, such that the arrest and incident search were lawful." *Id.*

Here, Plaintiff admitted to the Officer Defendants at the time of his arrest that he possessed the object for "safety" and "protection." BWC at 02:40:01-02:40:06; 02:42:10-02:42:24. The Body Worn Camera also shows Plaintiff pointing to what appears to be scars on his face and explaining that he kept the bat in the car for safety and protection because he "almost got killed last year." *Id.* at 02:42:32-02:42:40. In response, Officer Cannizzaro advised Plaintiff that he was "not allowed to have [the bat] for protection" because "it is considered a weapon; it's a blunt instrument." *Id.* at 02:42:24-02:42:32. Furthermore, Officer Cannizzaro testified during his deposition that the "mini bat" qualified as a billy club "based on [his] training and experience" because "[i]t's a blunt instrument that could cause serious injury or death if used as a weapon." Cannizzaro Dep. Tr. at 65:5-9. He further explained that he made the decision to arrest Plaintiff after Plaintiff "stated that the bat was for his protection." *Id.* at 64:18-24. Likewise, Officer Bardales testified during his deposition that he understood a billy club to be "[a] short stick that can be used as a weapon," such as "a smaller wooden baton." Bardales Dep. Tr. at 34:23-35:8.

Based on these undisputed facts, the Court concludes that it was reasonable for the Officer Defendants to believe that Plaintiff was in possession of a billy such that they had probable cause or, at a minimum, arguable probable cause to arrest Plaintiff. *See Washpon v. Parr*, 561 F. Supp

2d 394, 403 (S.D.N.Y. 2008) ("[E]ven if an officer is mistaken, and the arrestee did not commit the crime, the officer will not be held liable if he acted reasonably and in good faith."); *Anderson v. City of New York*, 817 F. Supp. 2d 77, 90 (E.D.N.Y. 2011) ("The test for qualified immunity is more favorable to officers than the one for probable cause; arguable probable cause will suffice to confer qualified immunity for an arrest." (internal quotation marks omitted)).

In sum, the Court finds that the Officer Defendants had probable cause to arrest Plaintiff or, at a minimum, are entitled to qualified immunity on Plaintiff's false arrest and false imprisonment claim because they had arguable probable cause to arrest Plaintiff based on Officer Bardales's observation that the rear license plate light of Plaintiff's vehicle was out, Plaintiff's act of littering in the officers' presence, and Plaintiff's possession of a billy.[9]  This is true even though Plaintiff ultimately was charged with only possessing a billy and a knife in violation of New York Penal Law section 265.01(1).  *See Jaegly*, 439 F.3d at 154 (finding that probable cause need not exist "with respect to each individual charge" ultimately brought, but only with respect to the charge "actually invoked by the arresting officer at the time of arrest").  Accordingly, the Officer Defendants are entitled to summary judgment on Plaintiff's false arrest and false imprisonment claim under section 1983.[10]

---

[9] Defendants also argue that the Officer Defendants had probable cause or arguable probable cause to arrest Plaintiff for possessing an open container with alcohol in his vehicle in violation of New York Vehicle and Traffic Law section 1227 and for possessing a knife in violation of New York Penal Law section 265.01(1).  Motion at 6-7.  Because the Court finds several other independent bases to support a finding of probable cause or arguable probable cause for Plaintiff's arrest, the Court does not reach whether Plaintiff's possession of an open container of alcohol and a knife also gave the Officer Defendants probable cause or arguable probable cause for his arrest.

[10] Both sides devote a considerable amount of their summary judgment briefing on a purported "unlawful search" claim related to the Officer Defendants' search of Plaintiff's vehicle and of his person.  *See* Motion at 10-13; Opposition at 10-21.  Because the Court does not construe the Complaint as asserting any separate claim for unlawful search, the Court does not address the parties' arguments on this issue.  *See Abe v. N.Y. Univ.*, No. 14 Civ. 9323 (RJS), 2016 WL

## 2. Malicious Prosecution

"To prevail on a Section 1983 claim for malicious prosecution, a plaintiff must demonstrate

both (i) a Fourth Amendment violation and (ii) the common-law elements of the tort of malicious

prosecution." *Taylor*, 2022 WL 744037, at *13 (citing *Mitchell v. City of New York*, 841 F.3d 72,

79 (2d Cir. 2016)).   A malicious prosecution claim under New York law requires a plaintiff to

show "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination

of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding;

and (4) actual malice as a motivation for the defendant's actions." *Dettelis v. Sharbaugh*, 919 F.3d

161, 163 (2d Cir. 2019) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)).   In addition

to the required state law elements, "to sustain a § 1983 malicious prosecution claim, there must be

a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal

---

1275661, at *5 n.5 (S.D.N.Y. Mar. 30, 2016) ("[T]he Court has no obligation to liberally construe a counseled plaintiff's complaint.").

Moreover, to the extent Plaintiff seeks to argue that the Officer Defendants lacked probable cause to effect the traffic stop or to search his vehicle, the legality of the initial traffic stop or the search of Plaintiff's vehicle is irrelevant to his false arrest claim. *Lawrence v. City Cadillac*, No. 10 Civ. 3324 (PKC), 2010 WL 5174209, at *5 (S.D.N.Y. Dec. 9, 2010); *see Di Pompo v. Mendelson*, No. 21 Civ. 1340 (CS), 2022 WL 463317, at *2 n.2 (S.D.N.Y. Feb. 15, 2022) ("Because the Second Circuit has rejected the application of the fruit of the poisonous tree doctrine to § 1983 actions, the violation discovered during the stop is not tainted by the alleged lack of reasonable suspicion justifying the stop." (cleaned up)).   The Second Circuit has held that "the fruit of the poisonous tree doctrine may not be invoked to support a section 1983 civil action, because the doctrine 'is an evidentiary rule that operates in the context of criminal procedure.'" *Lawrence*, 2010 WL 5174209, at *5 (quoting *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999)).   Said differently, the fruit of the poisonous tree doctrine is inapplicable to civil section 1983 actions because it "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Townes*, 176 F.3d at 145 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)); *see also DiMascio v. City of Albany*, 205 F.3d 1322 (Table), No. 99-7653, 2000 WL 232053, at *1 (2d Cir. Jan. 26, 2000) ("Thus, even assuming that the arresting officers lacked probable cause to stop appellant's car, there is no evidence from which a reasonable jury could conclude in this Section 1983 action that the officers lacked probable cause to arrest appellant for unlawful possession of the gun and knives.").

liberty and privacy interests under the Fourth Amendment." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004).

"A defendant initiates a proceeding when he plays an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Buari v. City of New York*, 530 F. Supp. 3d 356, 383 (S.D.N.Y. 2021) (cleaned up). A claim for malicious prosecution against a police officer "requires some showing that the defendant distorted the process by which [the] plaintiff was brought to trial." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 449 (E.D.N.Y. 2015) (citation omitted). "Showing that the police 'failed to make a complete and full statement of facts to the District Attorney, misrepresented or falsified evidence, withheld evidence or otherwise acted in bad faith' satisfies the initiation element of malicious prosecution." *Id.* (quoting *Manganiello*, 612 F.3d at 160).

As an initial matter, Plaintiff's malicious prosecution claim against Officer Bardales cannot stand because there is no evidence that Officer Bardales initiated a criminal proceeding against Plaintiff. The complaint in the Criminal Action was signed by Officer Cannizzaro only, *see* Shin Declaration, Exh. I at 2-3; Cannizzaro Dep. Tr. at 76:21-23, and Officer Bardales testified during his deposition that he does not "remember ever signing a criminal supporting deposition for [*sic*] affidavit in this case," Bardales Dep. Tr. at 94:20-23. Plaintiff also points to no evidence that Officer Bardales made inaccurate or incomplete statements to the District Attorney, misrepresented or falsified evidence, or otherwise acted in bad faith.

Moreover, Plaintiff's malicious prosecution claim fails as to both Officer Defendants because there was probable cause to prosecute him. "Probable cause, in the context of malicious prosecution, has been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir.

2003).  "[W]hile a false arrest claim fails if there was probable cause to arrest the plaintiff for *any* offense, in the malicious prosecution context, there must be probable cause for the offenses *charged*."  *Tompkins v. City of New York*, 50 F. Supp. 3d 426, 435 (S.D.N.Y. 2014) (citations omitted).  Moreover, while "probable cause in the malicious prosecution context requires the police officer or prosecutor to believe that a criminal defendant 'could be successfully prosecuted,' . . . it is not necessary for the officer to be certain that the prosecution will be successful."  *Williams v. City of New York*, No. 10 Civ. 9594 (CM), 2012 WL 547508, at *6 (S.D.N.Y. Feb. 17, 2012).  "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York."  *Manganiello*, 612 F.3d at 161-62.

As discussed in detail above, the record is replete with undisputed facts, supported by admissible evidence, that indicate that there was probable cause to arrest and initiate the prosecution against Plaintiff for possession of a billy.  *See supra* III.A.1.  And there is no evidence that the Officer Defendants learned of any intervening facts between Plaintiff's arrest and initiation of prosecution to undermine that probable cause.  *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (stating that, for probable cause to dissipate between arrest and prosecution, "the groundless nature of the charges must be made apparent by the discovery of some intervening fact"); *Pierre v. City of New York*, 531 F. Supp. 3d 620, 626 (E.D.N.Y. 2021) ("Where probable cause to arrest existed, a plaintiff must show that the defendants learned of some intervening facts undermining probable cause between arrest and initiation of the prosecution, or the claim of malicious prosecution cannot survive." (cleaned up)); *Soto v. City of New York*, 132 F. Supp. 3d 424, 453 (E.D.N.Y. 2015) (granting summary judgment for the defendants where the plaintiff produced no evidence that law enforcement officers became aware of exculpatory evidence that could undermine probable cause after arrest).

There also was probable cause to initiate prosecution against Plaintiff for possession of a knife. It is undisputed that Officer Bardales recovered a knife from the vehicle Plaintiff was driving. Guillen Dep. Tr. at 69:25-70:25; Bardales Dep. Tr. at 60:19-21; Shin Declaration, Exh. I at 4; *id.*, Exh. K. Thus, it was reasonable for the Officer Defendants to assume that the knife belonged to Plaintiff. While there may be some disagreement as to whether Plaintiff knew about the knife recovered from his vehicle, or whether the District Attorney properly charged the knife as a weapon under New York Penal Law section 265.01(1), Plaintiff's claim still fails because the Officer Defendants, at a minimum, had arguable probable cause to initiate prosecution against Plaintiff for possession of the knife, entitling them to qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable."); *Butz v. Economou*, 438 U.S. 478, 507 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

Plaintiff's malicious prosecution claim fails for the additional reason that there is no evidence of actual malice. "Under New York law, malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Lowth*, 82 F.3d at 573 (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978)). No such showing of actual malice has been made here. There is no evidence that the Officer Defendants had any personal animus toward Plaintiff or that they were motivated by "something other than a desire to see the ends of justice served." *Id.*

For all the above reasons, the Court grants summary judgment on Plaintiff's federal malicious prosecution claim.

### 3. Malicious Abuse of Process

To establish liability for malicious abuse of process under section 1983, a plaintiff must establish the claim's elements under state law and the deprivation of a constitutional right such as a due process violation necessarily caused by abuse of criminal process. *Cook v. Sheldon*, 41 F.3d 73, 79-80 (2d Cir. 1994). A malicious abuse of process claim under New York law exists where a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse [or] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino*, 331 F.3d at 76 (internal quotation marks omitted). Said differently, "to state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.* As the Second Circuit has explained, "while malicious prosecution concerns the improper issuance of process, the gist of abuse of process is the improper use of process *after* it is regularly issued." *Cook*, 41 F.3d at 80 (cleaned up) (emphasis added).

In his Opposition, Plaintiff argues that "defendants have erroneously represented that plaintiff has failed to identify a collateral objective sought by the individual defendants in causing a criminal prosecution to be commenced against Mr. Guillen." Opposition at 23. In support, Plaintiff "submits that his complaint is replete with such factual averments, specifically his allegations that defendants initiated a criminal prosecution against plaintiff to be awarded overtime and increase their arrest count." *Id.* Plaintiff, however, does not provide any evidence to support his allegations and it is well-established that Plaintiff "cannot defeat [Defendants' Motion] by

relying on the allegations in his pleading." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996); *Jones v. Int'l Union of Operating Eng'rs*, 671 F. App'x 10, 11 (2d Cir. 2016) ("A party cannot overcome summary judgment by relying on 'mere speculation or conjecture as to the true nature of the facts' because 'conclusory allegations or denials' are insufficient to create a genuine dispute of material fact."); *Nathe v. Weight Watchers Int'l, Inc.*, No. 06 Civ. 4154 (DAB), 2010 WL 3000175, at *1 n.1 (S.D.N.Y. July 26, 2010) ("Citing to one's pleadings, of course, is insufficient to establish a genuine issue of material fact at the summary judgment stage."); *Kaplan v. Cnty. of Warren*, No. 19 Civ. 941, 2021 WL 4134758, at *4 (N.D.N.Y. Sept. 10, 2021) ("Plaintiff's bald, conclusory allegations contained in the Complaint are insufficient to create a genuine issue of material fact as to the properly supported facts alleged in the defendants' uncontested Statement of Material Facts.").  Plaintiff's malicious abuse of process claim fails for the additional reason that Plaintiff has not provided any evidence that the Officer Defendants took any action to pursue any collateral objective *after* the criminal complaint was issued.  Thus, the Court grants summary judgment on Plaintiff's federal malicious abuse of process claim.

### 4.  Deprivation of Rights and Denial of Equal Protection

Plaintiff's Twelfth Cause of Action, which alleges deprivation of rights and denial of equal protection in violation of sections 1981 and 1983, accuses the Officer Defendants of selective treatment of Plaintiff based on his race, national origin, ethnicity, religion, or sex.  Compl. ¶¶ 138-146.  The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  At its core, the Equal Protection Clause prohibits the disparate treatment of similarly situated individuals.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  "To establish a violation of the Equal Protection Clause based on selective enforcement, a plaintiff must ordinarily show the following: (1) that the person, compared with others similarly situated,

was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (cleaned up). "The elements of a selective prosecution claim are the same, except plaintiff must prove under the first prong that others similarly situated have not generally been prosecuted for the same type of conduct, and that plaintiff was singled out for prosecution." *Anderson*, 817 F. Supp. 2d at 94 (citing *United States v. White*, 972 F.2d 16, 19-20 (2d Cir. 1992)).

Plaintiff resists summary judgment on his equal protection claim, contending that the "complaint has clearly alleged that he was subjected to selective treatment by defendants compared to those similarly situated, *e.g.*, individuals who possess small, wooden bats they received from stadiums" as Plaintiff "was the only individual to be arrested for being in a possession of a small, wooden bat deemed to be a 'billy club' by defendants." Opposition at 25. Plaintiff also argues that "Defendants have not provided any rational basis for defendants' decision to assess a small, wooden bat as such because they testified that they have little to no experience arresting individuals in possession of a 'billy club,' likely because they would never arrest anyone in possession of a small, wooden bat from a baseball stadium but arrest[ed] [Plaintiff] despite defendants' possession of evidence that supported the opposite finding." *Id.* But Plaintiff cites to no evidence to support his allegation of disparate treatment by the Officer Defendants or that the Officer Defendants' actions toward Plaintiff in arresting him for possessing a billy were motivated by discriminatory animus.[11] Just as discussed above, Plaintiff's unsupported allegations are insufficient to defeat

---

[11] Plaintiff cites to portions of Officer Cannizzaro's and Officer Bardales's deposition testimony as purportedly supporting his argument that he "was the only individual to be arrested for being in a possession of a small, wooden bat deemed to be a 'billy club' by defendants." Opposition at 25 (citing Cannizzaro Dep. Tr. at 18:1-25; Bardales Dep. Tr. at 37:1-38:10). After

summary judgment for his equal protection claim.  *See Nathe*, 2010 WL 3000175, at *1 n.1 (conclusory allegations in a complaint are "insufficient to establish a genuine issue of material fact at the summary judgment stage"); *Jones*, 671 F. App'x at 11 ("A party cannot overcome summary judgment by relying on 'mere speculation or conjecture as to the true nature of the facts.'"). Plaintiff's claim of a deprivation of rights or equal protection violation under section 1983 on these grounds therefore must be dismissed.

As noted, in this Cause of Action, Plaintiff cites not only section 1983, but also section 1981.  "Unlike claims brought under Section 1983, a Section 1981 violation 'is not based on an underlying violation of a constitutional right, but rather provides an alternative statutory remedy for violations that concern an activity enumerated in the statute.'"  *Anderson*, 817 F. Supp. 2d at 95.  Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment." 42 U.S.C. § 1981(a).  Thus, to establish a claim under section 1981, a plaintiff must show (1) that the plaintiff is a member of a racial minority, (2) the defendant's "intent to discriminate on the basis of race," and (3) "discrimination concerning one of the statute's enumerated activities."  *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000).  The enumerated activities include the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property."  42 U.S.C. § 1981(a).  As with a claim for denial of equal protection under section 1983, "discriminatory intent is a necessary element of a § 1981 claim."  *Hill v.*

---

reviewing the relevant transcript excerpts of the Officer Defendants' depositions, the Court cannot find that their testimony even remotely supports Plaintiff's contention.

*Rayboy-Brauestein*, 467 F. Supp. 2d 336, 368 (S.D.N.Y. 2006); *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) ("[A] plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional.").

As an initial matter, Plaintiff does not appear to oppose summary judgment as to his claim under section 1981, so his section 1981 claim is deemed abandoned.  *See Kovaco v. Rockbestos-Suprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) ("[W]hen a counseled party moves for summary judgment, 'a partial response [by the non-movant] arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims.'" (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014))). Notwithstanding, Plaintiff's claim under section 1981 suffers from the same shortcomings as his equal protection claim under section 1983.  Plaintiff alleges that the Officer Defendants treated him differently from other similarly situated individuals on the basis of his race, national origin, ethnicity, religion or sex, Compl. ¶ 140, but he "fails to offer any facts showing that he was arrested *because* [he is a member of a racial minority]," *Anderson*, 817 F. Supp. 2d at 95.  Therefore, the Officer Defendants are entitled to summary judgment on Plaintiff's section 1981 claim as well.

The Court therefore grants Defendants' motion for summary judgment as to Plaintiff's deprivation of rights and denial of equal protection claim under sections 1981 and 1983.

### 5.  Conspiracy to Interfere with Civil Rights and Failure to Prevent the Conspiracy

Plaintiff also brings a claim for conspiracy to interfere with civil rights under sections 1983 and 1985, and for failure to prevent that conspiracy under section 1986, against the Officer Defendants.  "To establish a claim under section 1985, a plaintiff must show '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or

deprived of any right of a citizen of the United States.'"  *Marshall v. Port Auth. of N.Y. & N.J.*,
No. 19 Civ. 2168 (WHP), 2020 WL 5633155, at *10 (S.D.N.Y. Sept. 21, 2020) (quoting *Mian v.
Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)).

Defendants argue that summary judgment is proper on Plaintiff's conspiracy claim under
the intracorporate conspiracy doctrine.  This doctrine provides that "officers, agents, and
employees of a single corporate entity are legally incapable of conspiring together."  *Hartline v.
Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (internal quotation marks omitted); *accord Fed. Ins. Co.
v. United States*, 882 F.3d 348, 368 (2d Cir. 2018) ("[B]ecause employees acting within the scope
of their employment are agents of their employer, an employer and its employees are generally
considered to be a single actor, rather than multiple conspirators.").  "An exception to the
intracorporate conspiracy doctrine allows suits against individuals within a single entity when they
are pursuing personal interests wholly separate and apart from the entity."  *Dowd v. DeMarco*, 314
F. Supp. 3d 576, 588 (S.D.N.Y. 2018) (internal quotation marks omitted); *Little v. City of New
York*, 487 F. Supp. 2d 426, 442 (S.D.N.Y. 2007) (noting an exception to the intracorporate
conspiracy doctrine "where the individuals are motivated by an independent personal stake in
achieving the corporation's objective" (internal quotation marks omitted)).

The Second Circuit has extended the doctrine "to the context of conspiracies to interfere
with civil rights in violation of 42 U.S.C. § 1985."  *Fed. Ins. Co.*, 882 F.3d at 368 n.14 (citing
*Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 70 (2d Cir. 1976)).  Plaintiff appears to
acknowledge that the doctrine applies to his section 1985 conspiracy claim under Second Circuit
precedent, but argues that his claim "fall[s] within the 'personal stake exception' to the intra-
corporate conspiracy doctrine" because "plaintiff has irrefutably alleged that he was arrested based
on defendants' discriminatory racial biases."  Opposition at 25-27.  But, again, Plaintiff does not

27

provide any evidence to support his argument and the record is devoid of any facts to suggest that

the Officer Defendants treated Plaintiff differently than any other similarly situated person or that

their actions were motivated by an independent personal stake wholly separate and apart from their

duties as NYPD officers.  Therefore, Plaintiff's conspiracy claim under section 1985 is barred by

the intracorporate conspiracy doctrine.

Plaintiff also brings a conspiracy claim under section 1983.  "To prove a § 1983 conspiracy,

a plaintiff must show: (1) an agreement between two or more state actors or between a state actor

and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act

done in furtherance of that goal causing damages."  *Falls v. (Police Officer) Detective Michael*

*Pitt*, No. 16 Civ. 8863 (KMK), 2021 WL 1164185, at *58 (S.D.N.Y. Mar. 26, 2021) (quoting

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  The Second Circuit has yet to decide

whether the intracorporate conspiracy doctrine applies to conspiracy claims under section 1983.[12]

*See Zilioli v. City of New York*, No. 17 Civ. 9495 (WHP), 2020 WL 1548763, at *4 (S.D.N.Y. Apr.

1, 2020).  "Nonetheless, district courts have typically applied the logic of the intracorporate

conspiracy doctrine to § 1983 claims."  *Id.*; *see also Dowd v. DeMarco*, 314 F. Supp. 3d 576, 587

---

[12] In his Opposition, Plaintiff argues that the Honorable Andrew L. Carter, Jr. in *Gutierrez v. City of New York*, No. 15 Civ. 9907 (ALC), 2019 WL 1427391 (S.D.N.Y. Mar. 29, 2019), "refused to extend the intracorporate conspiracy doctrine to section 1983 case [*sic*], basing [his] decision upon the Second Circuit's refusal to do itself."  Opposition at 25.  Although Plaintiff is correct that Judge Carter in *Gutierrez* declined to extend the intracorporate doctrine to section 1983 cases, Plaintiff mischaracterizes Judge Carter's reasoning as being based on the fact that the Second Circuit "refused" to extend the doctrine to section 1983 cases.  Rather, Judge Carter and the cases on which he relied observed that the Second Circuit has not yet extended the intracorporate doctrine to section 1983 cases.  *See Gutierrez*, 2019 WL 1427391, at *3 ("The Second Circuit has recognized the applicability of the intracorporate conspiracy doctrine in the context of § 1985 cases, but it has not, however, extended the doctrine to § 1983 cases." (citing first *Terry v. Hulse*, No. 16 Civ. 252 (KMK), 2018 WL 4682784, at *12 n.12 (S.D.N.Y. Sept. 28, 2018) ("Although the Second Circuit has recognized the intracorporate conspiracy doctrine in the context of § 1985 cases, it has not yet extended the doctrine to § 1983." (citations omitted)), then *Ali v. Connick*, 136 F. Supp. 3d 270, 282 (E.D.N.Y. 2015) (same)).

(S.D.N.Y. 2018) (applying the intracorporate conspiracy doctrine to bar a section 1983 conspiracy claim against members of the NYPD); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 388 (S.D.N.Y. 2013) (collecting cases); *Danielak v. City of New York*, No. 02 Civ. 2349 (KAM), 2005 WL 2347095, at *14 (E.D.N.Y. Sept. 26, 2005) (holding that the intracorporate conspiracy doctrine barred the plaintiff's section 1983 conspiracy claims because all of the individual defendants were employees of the NYPD and were acting within the scope of their employment as police officers when they arrested the plaintiff).  The Court finds persuasive the reasoning set forth by the district courts in this Circuit that have held that the intracorporate conspiracy doctrine applies to conspiracy claims under section 1983, and therefore joins those courts in so holding.  As with Plaintiff's section 1985 conspiracy claim, the Court also finds that Plaintiff cannot avail himself of the personal stake exception to the doctrine.

But even if the personal stake exception applied such that Plaintiff's conspiracy claim under sections 1983 and 1985 was not barred by the intracorporate conspiracy doctrine, the claim nonetheless still fails because Plaintiff has not cited to any evidence in the record to support his conclusory allegations of the Officer Defendants' participation in a conspiracy to interfere with his civil rights or any discriminatory animus on their part.  *See, e.g.*, *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996) (finding that the district court properly granted summary judgment dismissing the section 1985 claim where the plaintiff only offered conclusory allegations of racial discrimination); *Marshall*, 2020 WL 5633155, at *10 (granting summary judgment on the plaintiff's section 1985 conspiracy claim because "there is no evidence of racial or other class-based animus on the record" and the plaintiff "only offers conclusory allegations that the actions involved discriminatory animus").

As for Plaintiff's claim for failure to prevent the conspiracy to interfere with civil rights under section 1986, "[a] claim under section 1986 . . . lies only if there is a viable conspiracy claim under section 1985." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994); *Marshall*, 2020 WL 5633155, at *10 ("[S]ince a § 1986 claim must be predicated upon a valid § 1985 claim, summary judgment is granted on [the plaintiff]'s § 1986 claim as well."). Because Plaintiff's section 1985 claim fails, so too must his section 1986 claim.

Accordingly, the Court grants summary judgment on Plaintiff's conspiracy claim under sections 1983, 1985, and 1986.

### 6. Municipal Liability

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court recognized that a municipality can be held liable under section 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690; *Taylor*, 2022 WL 744037, at *24 (recognizing that a municipality cannot be made liable under section 1983 under the doctrine of *respondeat superior*, but rather the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury" (internal quotation marks omitted)). Put simply, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is *caused by* a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (emphasis added); *Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

"To hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (alteration in original and citation omitted).  To establish the existence of a municipal policy or custom, a plaintiff may demonstrate that his or her constitutional injuries arose from:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the municipal employees.

*Schroeder v. Cnty. of Nassau*, 158 F. Supp. 3d 123, 130 (E.D.N.Y. 2016) (citation omitted).  "A custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the government."  *Bowen v. Cnty. of Westchester*, 706 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) (cleaned up); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

Plaintiff argues in his Opposition that he "has sufficiently alleged pervasive and systemic patterns and practices by the defendant City of New York, particularly regarding its actual or de facto policies with respect to its hiring, training, retention and supervision of its employee police officers, or rather the lack thereof."  Opposition at 32.  Plaintiff further argues that "[t]o the extent that the City does [not] actively promote or encourage such widespread misconduct, Plaintiff submits that the City is at the very least deliberately indifferent to such violative behavior."  *Id.*

31

Case 1:19-cv-05655-JPC-OTW   Document 104   Filed 09/02/22   Page 32 of 34


Plaintiff does not identify a single custom or policy, let alone present any evidence of a custom or policy officially endorsed by the City of New York. "[N]or does he show that municipal officials—those imbued with decision-making authority—implemented policies or took actions designed to deprive [him] of his constitutional rights." *Marshall*, 2020 WL 5633155, at *10; *accord City of Oklahoma City*, 471 U.S. at 823-24. Because the record does not present any genuine dispute as to the existence of an unconstitutional municipal policy, the Court grants summary judgment on Plaintiff's section 1983 claim against the City of New York.

### 7. Abandoned Claims

Defendants also move for summary judgment on Plaintiff's claims for excessive force and failure to intervene. *See* Motion at 16-20. As discussed above with respect to Plaintiff's equal protection claim under section 1981, *see supra* III.A.4, the Court deems these claims abandoned given Plaintiff's failure to address the claims in his Opposition. *See Kovaco*, 834 F.3d at 143; *Hardy v. City of New York*, 732 F. Supp. 2d 112, 125 (E.D.N.Y. 2010) ("Federal courts have the discretion to deem a claim abandoned 'when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.'" (citation omitted)); *Dineen ex rel. Dineen v. Stramka*, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002) (noting that the plaintiff's failure to address the defendant's claims in opposition to summary judgment "enable[s] the Court to conclude that [the plaintiff] has abandoned them" (citation omitted)).

## B. State Law Claims

Having dismissed all of Plaintiff's claims that were brought under federal law, the Court turns to Plaintiff's claims under state law for (i) false arrest and false imprisonment, (ii) assault and battery, (iii) malicious prosecution, (iv) failure to intervene, (v) malicious abuse of process, (vi) deprivation of rights and denial of equal protection of the laws, and (vii) negligent hiring,

retention, and supervision.  Defendants move for summary judgment on Plaintiff's state law claims principally for the reason that they are time-barred.  Motion at 24-25.

A district court "may decline to exercise supplemental jurisdiction over [a pendant state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).  The statute does not create a "mandatory rule to be applied inflexibly in all cases."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Nevertheless, the Second Circuit has held that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Kelsey v. City of New York*, 306 F. App'x 700, 703 (2d Cir. 2009) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *see also Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing a district court decision to retain supplemental jurisdiction over state law claims after dismissal of the federal claim, citing "the absence of a clearly articulated federal interest"); *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendant jurisdiction." (internal quotation marks omitted)).

Here, the Court concludes that the balance of factors to be considered—judicial economy, convenience, fairness, and comity—point toward declining to exercise supplemental jurisdiction now that all federal claims have been dismissed.  This is particularly true given the parties' disagreement as to the timeliness of Plaintiff's state law claims.  *See Steinbergin v. City of New York*, No. 19 Civ. 1314 (JMF), 2021 WL 396690, at *6 (S.D.N.Y. Feb. 5, 2021) (declining to exercise supplemental jurisdiction over the plaintiff's pendent state law claims after dismissal of

all federal claims because "[a]mong other things, whether [the plaintiff's] state-law claims are timely and whether—if his claims against any of the individual Defendants survive—there is a basis to hold the City liable as well are questions 'best left to the courts of the State of New York'"), *aff'd* No. 21-536, 2022 WL 1231709 (2d Cir. Apr. 27, 2022).  Thus, while the Court grants summary judgment and dismisses the claims over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses those claims without prejudice to filing in state court.

## IV.    Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment. The Court dismisses with prejudice all of Plaintiff's federal claims (the Second, Fourth, Sixth, Eighth, Tenth, Twelfth, Thirteenth, and Fifteenth Causes of Action).  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims (the First, Third, Fifth, Seventh, Ninth, Eleventh, and Fourteenth Causes of Action) and dismisses those claims without prejudice.

The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 80, enter judgment, and close this case.

SO ORDERED.

Dated:  September 2, 2022
New York, New York

_____
JOHN P. CRONAN
United States District Judge